Case number 21-2899, USA v. James Pieron Jr. Oral argument not to exceed 15 minutes per side. Mr. Sass for the appellant. Take your time, sir. Mr. Sass, appearing on behalf of James Pieron, I believe I have reserved two minutes for rebuttal. Okay. James Pieron had a rather complicated personal and business finances arising from his time in Switzerland when he formed a company there and had money invested there. And it left even the tax professionals uncertain as to what his liabilities were. He initially filed tax returns for the years in question showing that he owed substantial amounts of money. He later, not that much later, a year or so later, hired a certified public accountant who initially agreed that he owed money, disagreed on the numbers that were involved, but then changed his mind and believed that he did not owe any money for these years in question. And at the time that he thought he owed money, he filed a request to set up a payment plan. After it was determined by his accountant that he didn't owe money, he filed tax returns saying, I don't owe money for these years. And here's why. He submitted a lengthy statement with the tax returns explaining his position. He also filed an offer to compromise, something called a doubt as to liability with the Internal Revenue Service. After that, he repeatedly sought to have the Internal Revenue Service determine whether, in fact, he was correct, whether he owed money, didn't owe money, and so on. From 2012 until the determination was made to indict Mr. Perron in 2018, the Internal Revenue Service repeatedly ignored his requests or misled him as to the status of his returns. Well, he was under investigation, right? So they have this freeze code procedure. They put this freeze code in. It's there to protect defendants, right? The purpose supposedly is to protect defendants. It certainly didn't protect Mr. Perron. So what are they supposed to do? I mean, what's the... Well, the idea of the freeze code is that they won't have the civil people come in, as I understand it, and take statements from people at a time when it might be used against them in court. Well, that's all very notable and good policy. But it's not good policy when you use it for a period of six years, when the person who is the subject to the investigation doesn't know that it's in effect, when the person who's the subject to the investigation files tax returns and expects that he won't have to pay money until they tell him that, in fact, you do owe money, that you're wrong. But didn't they tell him in 2011 he owed $360,000? In 2011, initially, he filed tax returns saying he owed them. And then he filed amended tax returns. I mean, correct me if I'm wrong, but I thought the IRS, in 2011, responded to him and said, you owe, it was like, $14,000 more, some $380,000 number. Is that numbering? Is that accurate? I'm not sure about the numbers, Judge. They did, in 2011, after he initially filed his return, send him a notice saying you owe these amounts. Right. But they told him you owe like $380,000 something. Yes. So, I mean, they gave him, you know, at that point in time, they told him what they thought he owed. Right. And then he filed an amended return. So, I mean, why didn't he know then where they stood as to his liabilities? Well, because he filed an amended return after that. And according to the amended return, he owed no money for those years. But, I mean, you know, the IRS had just, in their expertise, told him, you owe us $389,000 or whatever it was. For him to file something saying, guess what, I owe zero. I mean, you know. Well, and they could have easily said, we're not accepting that. We're sticking with our number. They never got back to him and said, you still owe this money. Did they have an obligation to have this sort of constant background? Yes. Absolutely, they had this obligation. I mean, that's where the whole taxpayer bill of rights comes in. That they have an obligation when you file something with them to promptly deal with it. Now, we all know what promptly may not mean, you know, this week, next week, next month. But certainly, six years later is not promptly. And to mislead him and tell him that his tax returns are being considered, that we will let you know when, in fact, they were not going to do that. Did they say that, you know, that we'll let you know? Yeah, they repeatedly, when his accountant got a hold of them. Well, you could do this on rebuttal. Okay, that's fine. Let's cut to the chase. This is the case with the instructional issue. This is the case. I have another criminal tax case tomorrow morning with a single defendant. I'm really working to keep them separated in my mind. Okay. So your client has the instructional issue. There's a limitations issue. Correct. Bill of particulars, 19 paragraphs, only three of which involve events that would fall within the limitations period. Correct. And I guess just to, you know, go right to it. We have this, like, Musashio case or however you say it, right, that says if the defendant puts a defense in issue, they have an alternative formulation, puts a defense in issue or presses a defense, then you get an instruction. Yes. And so, I mean, I don't mean to give a speech, but by way of background, we don't normally ask juries to make limitations findings, right? Right. I mean, most criminal cases come to us, and the jury, they're not instructed, hey, you know, make sure the drug dealing happened within the limitations period. Usually because it's fairly obvious it did. It's just not a contested issue. And 99.9% of the time. And were you the counsel in the trial court, sir? I was local counsel in the trial court, Judge. Okay. So you guys are asking for the instruction very early in the litigation. Before the trial started. And then after the trial. But the one thing you don't do is argue to the jury that he did not commit an act of evasion within the limitations period. Because the judge had already told us he was not going to instruct on that ground, Judge. We had nothing to argue with. But you asked for an instruction afterward. I mean, why not? We asked for an instruction before. I know you did, but you also asked for an instruction during the trial. Yeah, but before the closing arguments, Judge. Okay. Well, I guess it seems to me that the issue in this case might turn upon the, you know, what exactly does like put a defense in issue mean? I absolutely agree with you. But I think in this case we did it in two ways, Judge. We filed a motion to dismiss based in part on the statute of limitations. And the government responded to that saying, yes, we will show that there were acts committed within that were not barred by the statute of limitations. So they understood that they were on notice to prove their case. And secondly, we submitted the jury instruction. We submitted four proposed jury instructions in this case. Right. One week before trial. The very first one was statute of limitations. Did you make a rule 29 and say they didn't prove acts, they didn't prove any of the acts that occurred during the limitations period? There was a rule 29, yes. In fact, that's one of the issues on appeal. But was it just on the, I'm just curious. I'm not saying you would have to have done this. Was it just on the general sufficiency of the evidence or did it specifically say, by the way, the three things that they had the burden to prove after this, whatever, January 2012, those things for sure weren't? It was not done in the specific area that you're saying. It did say that they had not proved any overt act of evasion. But it did not get into the three. But this defense, it's not really an affirmative defense. You don't bear any burden of production on it. That's our position, Your Honor. We do bear a burden, but that's to put them on notice that it is an issue. But after that, the burden is to them to put the money, put it before the jury and then to convince the jury that they have been successful. I think they would say they did precisely that. And they had a whole bunch of acts, you know, like not declaring all these Mercedes-Benzes on the asset sheet that occur within the limitations period. Yeah. They did all that. But the problem was, though the jury was never told, that all the stuff that they heard that didn't go through, the 16 of the 19 that was not after the effective date of the statute of limitations, they were not told that as to this element, they couldn't consider those, that they had to find one of those three acts. Or it didn't have to be one of those three, I don't think, but it had to be something within the statute of limitation period. What they did argue was, you know, that he waited to pay his taxes. He didn't pay his taxes all this time. He finally paid his taxes. That was evidence of guilt. The Mercedes, they did raise the Mercedes. They didn't raise the other items. They didn't raise the F-bar argument, which they're now asking this court to rely on. That was never made in their argument before the jury. You're saying they didn't raise the other circumstances in paragraphs 16 through 19 other than the Mercedes? The F-bar, they didn't. No. Well, they raised the business about the one account where he said he had only 250. No, they didn't raise that in their argument, Judge. It was evidence. Was that part of the evidence? It was part of the evidence. I mean. That was part of the evidence, but it was not raised. The evidence is what matters, you know. When they're trying to say we can ignore this because this was what the jury decided, and it wasn't even important enough for them to argue to the jury, but they argued a whole bunch of stuff that they couldn't rely on. So going back to the question I was raising earlier, I mean, you know, what does it mean to put a defense in issue? And I know this is a defense as to which you don't bear the burden. So the question is, is it enough for purposes of the Supreme Court's Musascio case? Is it enough for you simply to ask for the instruction, and then ergo regardless of whether you really contested factual point of trial, the court must instruct? Or, and this is the sense that Judge Ludington seemed to have, one very experienced, very good district judge, he seemed to think that you had not factually contested this point at trial. And that's, and he's like, it'd be like a, you know, a murder case where the guy says, Your Honor, I want a self-defense instruction. Here's a legally perfect self-defense instruction. And the judge says, there's no factual issue here as to self-defense. That's why this is different. Because we don't have the burden. And it is a thing that you can argue to the jury until closing argument. But let's set aside the burden question just for this purpose. Why can't a district judge say, as to something that's not an element, say, you know, I'm not going to give that instruction because that's not a genuine factual dispute in this case. And I'm not going to distract the jury with something that is just not germane to what they've heard about. Because it's, we here on notice that it was a factual dispute, Judge. It was always a factual dispute in this case. But if you, let's say, like, hypothetically, let's say we have a case with, you know, paragraphs 16 through 19. And let's say those are just obviously evasive things. And it's put in front of the jury. And so, and the defendant's not disputing that they were evasive actions. I mean, what is there to instruct? It's sort of like a distribution case where the guy, you know, dealt cocaine nine months before he got indicted. It's like, what is there to instruct about the limitations period? Well, I think, assuming there was also, in addition to the 16 to 19, some evidence of cocaine dealing that would have been barred. And the instruction was requested. And they were put on notice at the statute of limitations. The case law, including the Supreme Court case law, seems to support the fact that you have the absolute right to that instruction. Which case do you cite for that proposition? Well, I think the Griffin case. Because Dicascio conditions it on defense. The Griffin case talks about, in Griffin, there were, it came up, there were, I'm out of time, Judge, but. You can. There were, the argument, the defense argument was that it went, there was two theories that it went to the jury on a, and one involved the DEA, one involved the IRS. I forget exactly what the facts were. But there was, the judge instructed the jury they could find the defendant guilty if they found either of these conditions. Well, on appeal, they said, wait a minute. As to one of these conditions, there was absolutely no evidence. How do we know that the jury didn't find, based on the one, that there was no evidence? And the Supreme Court ultimately said, we trust the jury in these circumstances to decide that. This is different than a case like, in Justice Scalia's opinion, specifically referred to limitations, statute of limitations, as being this is not the type of case where we go into this sort of a, a determination as to whether we should trust the jury or not. This is a legal question. A case you're talking about? Yes. Okay, we'll look that up. You're going to have your rebuttal. Any other questions at this stage? You know, I have one question. Sure, go ahead. I apologize. So, I understand you didn't argue statute of limitations at the trial. But what did you argue to rebut the evidence regarding these two 433Fs and the F-bar, which were the things within the statute of limitations period? What evidence was presented on your side to rebut that those were violations? Well, the evidence as to the statements were that the Mercedes was owned by his company, not by him personally. He listed his company, and he listed the value of the company, and they had the tax returns of the company, which showed the Mercedes. So the Mercedes, the Mercedes, and there was never one piece of evidence that the Mercedes was not used by the company for company business. So this would have just been in closing, if you had gotten the instruction, in closing argument, you would have gotten up and said, the government admits that this Mercedes was in the company's name, not in my client's name, and this business, and whatever, whatever. You would have, I guess, pointed it out in the closing argument. In all likelihood, there would have been a much clearer discussion of that before the jury. As it was, we had all of this. We had the false statement that he supposedly made denying his citizenship. We had the bank account stuff, all of which came before the statute of limitations. We had all of these other things, the piano purchase, this purchase, that purchase, that they were claiming, somehow was evasive. So we had all of these things to deal with, as opposed to just the three items that should have been before the jury. Okay, thank you. All right, you'll have your rebuttal. We'll hear from the United States. May it please the court. Jules DePore on behalf of the United States. We are asking this court to affirm the judgment of the district court. The issue that we've been spending the most time with today is the statute of limitations. And the statute of limitations is an affirmative defense. And it was on. Is the burden approved? It's unclear. Really? No. That's news to me. Are you sure it's an affirmative defense? It is. And that's been held in Titterington, a case of this court in 2004. And it's been upheld by Musacchio and Smith. Smith very clearly says that it's not an element of the offense. Right. And so even in the defendant's reply brief, they acknowledge that it's an affirmative defense. The disagreement is over what sort of meets their burden. There's clearly a burden shifting that goes on. They have to put it in issue or press the defense. Right. And I think the language. How many times do they have to ask the district court for the instruction in order for this to blip the radar about putting it in issue? I don't think asking for the instruction is sufficient to press the defense. I think that there has to be some sort of evidentiary basis for it. Do you have any case law on this? We have a word from Musacchio, press. It's not very helpful about what that means. Surely there's some case law from somewhere about what it takes to put a defense in issue to the point where the district court must render an instruction. So do you have any cases on this? We weren't. We weren't able to find any. What we were able to find. What about the pretrial motion? I mean, it's not like they completely made this up at trial, right? They filed a motion before trial? Correct. So why is that not enough? I mean, Musacchio references raising something before trial, right? So, I mean, why is that not enough? I say before trial, hey, you don't have any elements. You don't have any stuff that happened within the limitations period. You put on your case. The judge says, no, let's wait for trial. You put on your case. And let's say I say, look, I looked at all your evidence and you didn't put on any evidence of anything within the limitations period. So, judge, can I get an instruction? And I'll argue to the jury that none of the things that they did were within the limitations period. What else do I have to do? I think what they had to do in this case, because they filed that motion. The court said, nope, this is a factual issue. There are limitations. The government showed in its response that there were affirmative acts within the limitations period. The three most notable are the two false. Well, that's your view of it, and we understand that. But that's going off the track of his question. I guess to answer it as directly as possible, the jury would have to have some information that they're bringing an affirmative defense. Like an instruction, right? How about an instruction? I read Judge Whitington's statement, and it was interesting. It almost sounded like he was granting a directed verdict to the government. Like, hey, I don't think there's really any dispute here. It was like what Judge Kethledge was saying before. Hey, it's like an obvious case. There's obviously things that are happening within the limitations period. I'm not going to let it go to the jury. But I find it odd, because you put on the evidence. The evidence is the Mercedes was in the company's name. And he says, okay, it's in the company's name. It's not in my client's name. What fact does he have to put in? Why can't he just say to the jury, this car is not in my name? Now, you can argue, hey, look, this guy is just evading tax rules. He's playing around with his company, moving money back and forth. You both make your arguments, and the jury says yea or nay. What else does the defense have to do? Why do they have to put anything in? I don't think it's fair to say that they contested the arguments, affirmative acts that we were showing within the limitations period. The existence of those acts, and that's what Judge Ludington seems to be saying, is that, hey, nobody disputes that these things happen. But what a jury must find is that one of those acts constitutes evasion. Why isn't that the prerogative of the jury here? You have 19 paragraphs, only three of which involve acts that fall within the limitations period. All of this is getting backed up, getting dumped on the jury. Here's 19 paragraphs of stuff. Nobody tells them that you must find one of these things that, like, undisputedly did happen. One of these things that fell within the limitations period that's in the four paragraphs that are timely as opposed to the 15 that aren't, you have to find one of those. So why shouldn't the jury have been told, you better find something in paragraphs 16 through 19 that's evasion, otherwise this is time-barred? He asked for it. Why wasn't he entitled to that? Because there was no evidentiary basis showing a dispute. It's your burden to prove evasion, right? And they want to argue. I mean, Mr. Sass says they want to argue that these events, the Mercedes and so on, we have explanations for 16 through 19. The bank account amount was just a simple mistake and so on. They want to argue that. They forbear because the jury's not going to understand why they're arguing about those things absent an instruction. So, I mean, it's your burden to prove an act of evasion, that these things are evasions as opposed to something that's not evasive. It was never the position of the government that the 19 items listed in the bill of particulars were all acts of evasion. That bill of particulars laid out the government's evidence with regard to all the elements. So it established, for instance, that a tax was due an owing. And there were really four acts of evasion in this case. The two collection information statements, the 433s, and the F-bar. The other one was the W8BEN that was, the government asserted, false information that was provided to undermine the IRS collection efforts. Was that within the statute of limitations? That was not. And that is what the defendant was very successful at rebutting during its very effective cross-examination. Which ones were the 433s and the F-bar thing? Yes, Your Honor. So there was two 433s. It was the 2012, January 30th, 433. The F-bar. Like his asset statements? Yes. Right. The F-bar is an asset statement as well, but the 433s are the asset statements. And what the 433s do is they encompass. He's telling the IRS, I'm broke. I have $108 in my account. Is this, it's kind of harmless error. So you're saying the three, the one thing that was evasion before the limitations period, they effectively rebutted. So it's harmless because the jury pretty much had to have relied on the three evasive actions that were within the limitations period? Yes, Judge. I think it goes both to harmless error, but also to the third prong that the court must consider when determining whether an instruction, whether determining instructional error under Adams. So both parties agree, Adams. Impairment business. Pardon? Impairment. Yes, so that it has to undermine their defense. And in this case, that was not their defense. The two defenses that they raised were good faith and this taxpayer bill of rights issue, and they hammered it to the jury over and over. What they didn't do is to contest the evidence within the limitations period of acts of evasion. And those, the three acts of evasion, the F-bar, virtually, I mean they didn't have anything that they could do to contest that because it's based on bank records. The 433s, those are based on bank records and information showing that Mr. Pierron repeatedly was using those accounts that he's put in corporate names as his personal piggy bank. And so it was really the, when you're looking at the affirmative acts of evasion that were at issue in this case, three were within the limitations period. One was out, and the one that was out was really undermined significantly by Mr. Sassa's very effective cross-examination. I think it does go directly to harmless error. Is the law pretty clear about the application of harmless error, in your view, to this kind of instructional error, particularly a limitations issue? With respect to limitations issues, no. With respect to non-constitutional instructional error, absolutely. And so I think Musacchio has been, I think, miscited by Mr. Pierron as standing for the proposition that there is no harmless error analysis, and it's quite the opposite. Musacchio is saying there's no plain error if it's not raised below. I think there has to be instructional error. It's very clear that this is not a constitutional issue. It's not structural. And so I think harmless error does carry the day here. Okay. Does the Court have anything else? I don't think so. I will sit down. Thank you. Thank you, Mr. McCoy. We'll hear from Mr. Sass. As to the question about contacts with the IRS and responses from the IRS during this period of time to lead him to believe that this was being considered and, frankly, misleading statements to him, Exhibit 1007, which is at the record at ECF number 191-7. It's page ID 4211. It's a compilation that was kept by the accounting firm as they've made contacts with the IRS through the years trying to get action on his tax return. Okay. So we've got that. Let's just kind of go back to the instructional thing for a second. Sure. Mr. DePore makes the point that, hey, we've got four acts of evasion. Three occur within the limitations period in their view. And the defense did not meaningfully seek to dispute at trial that the three within the limitations period were, in fact, evasive. So this is not a constitutional error that's at issue here. I believe it is, Judge. Okay. But, well, let's set that to one side. If this were subject to harmless error, why isn't it harmless error? I mean, you took apart the citizenship document business. Well, I didn't take it apart well enough because they still argued it to the jury, Judge. Okay. But there was no similar dismantling of these 433s and the FBARs and so on. There weren't just four. I mean, the government was claiming everything from his, all of the transfers of money. Okay, but I'm focused right now on these three things that Mr. DePore was just talking about and Judge Bush has asked about them. I don't see anywhere where the defense meaningfully rebutted the argument that these were acts of evasion. So if this is subject to harmless error analysis, why isn't this harmless? Judge, I would refer back to my second argument, which obviously I haven't argued here. I know arguing, Judge, is an equivalent to an appellate court is a tough hurdle to climb. But we did make that argument there that there wasn't even enough to make a judgment of acquittal, let alone a harmless error, which has got to be a much higher hurdle than that. He did list his assets. He did list. I mean, you know, really? I mean, could a jury find that he was using all of these corporations as a piggy bank, as the government said? Couldn't a jury find that? I think this jury. He's got $3,500 to his name. Well, he didn't say he had $3,500 to his name, Judge. He said $3,500 in his bank account. He tells the IRS he's got $3,500 in a bank account while he's driving a $139,000 Mercedes. Which is owned by his corporation, which is used in his corporation. Which he wholly controls, right? I understand that, Judge, but that wasn't the question on that questionnaire. It wasn't do you have, can you take money from this corporation, which is losing money hand over foot, and which shortly thereafter went out of business, and pay off the IRS. That wasn't what the question was. The question was what assets do you own, and he included the company, and he told what the value of the company is, and now the government has not. We don't need to get into the matter. Okay. More questions? All right, Mr. Sass. Okay, thank you, Your Honor. Thank you for your argument. Thank you, Mr. Fore. The case will be submitted.